# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PPEP MICROBUSINESS AND HOUSING
DEVELOPMENT CORPORATION,
820 East 47th Street, Suite B-15
Tuscon, AZ 85713
on behalf of the ROCKY MOUNTAIN/HAWAII
SHOP CONSORTIUM,

                   Plaintiff,

    - against -

ALPHONSO JACKSON,
SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT,
451 Seventh St., S.W.
Washington, D.C. 20410

and

WILLIAM H. EARGLE, JR.
DEPUTY ASSISTANT SECRETARY FOR
OPERATIONS,
ASSISTANT SECRETARY FOR COMMUNITY
PLANNING AND DEVELOPMENT,
UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT
451 Seventh Street, S.W.
Washington, D.C. 20410

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.

1:06CV01615 (CKK)

## MOTION TO DISMISS

    Defendants, by and through undersigned counsel, respectfully move to dismiss this case

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants respectfully

refer the Court to the accompanying memorandum of law and declarations attached thereto.

Dated  December 22, 2006                    Respectfully submitted,
Washington, D.C.

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            JEFFREY A. TAYLOR
                                            United States Attorney

                                            MICHAEL SITCOV
                                            Assistant Branch Director

OF COUNSEL:                                 /s/ Varu Chilakamarri
CHRISTOPHER R. OPFER                        VARU CHILAKAMARRI (NY Bar)
Office of Litigation                        Trial Attorney, Federal Programs Branch
U.S. Department of                          U.S. Department of Justice, Civil Division
Housing and Urban Development               Tel: (202) 616-8489
451 7th Street, SW Room 10258               Fax: (202) 616-8460
Washington, D.C. 20410                      varudhini.chilakamarri@usdoj.gov

                                            Mailing Address:
                                            Post Office Box 883
                                            Washington, D.C.  20044

                                            Courier Address:
                                            20 Massachusetts Ave., NW, Room 6141
                                            Washington, D.C. 20001

                                            *Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PPEP MICROBUSINESS AND HOUSING
DEVELOPMENT CORPORATION,
on behalf of the ROCKY MOUNTAIN/HAWAII
SHOP CONSORTIUM,

                  Plaintiff,

   - against -

ALPHONSO JACKSON,
SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT,

and

WILLIAM H. EARGLE, JR.
DEPUTY ASSISTANT SECRETARY FOR
OPERATIONS,
ASSISTANT SECRETARY FOR COMMUNITY
PLANNING AND DEVELOPMENT,
UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.

1:06CV01615 (CKK)

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

PPEP Microbusiness and Housing Development Corporation ("Plaintiff") attempted to electronically submit a grant application to the Department of Housing and Urban Development ("HUD"), a few hours before the deadline for which all such applications had to be filed.  Plaintiff was unable to submit its application by the deadline due to an alleged computer failure.  Plaintiff tried to submit a paper version of its application one week after the deadline expired, but HUD refused to accept it.  Plaintiff then filed this suit seeking a mandatory injunction that would require

HUD to accept and review Plaintiff's grant application.

Plaintiff's action against HUD must be dismissed under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. Specifically, the Complaint fails to identify an applicable waiver of sovereign immunity which would permit this suit against HUD. The Complaint also fails the case or controversy requirement, because the requested remedy is no longer available–HUD has already reviewed all the timely filed grant applications for this year and has awarded the grant at issue to three applicants. Therefore, Plaintiff's claim is moot.

Even if this Court had jurisdiction over Plaintiff's claim, the Complaint should be dismissed for failure to state a claim upon which relief can be granted. The Complaint asserts no legal basis for the notion that HUD has a duty to review Plaintiff's untimely application. The reason is clear: there is no inherent right to have HUD review an application submitted after the official deadline has passed and after all other applicants have submitted their applications.

## STATUTORY AND REGULATORY BACKGROUND

HUD annually administers several grant programs directed at improving housing opportunities. Among these programs is the Self-Help Homeownership Opportunity Program ("SHOP"), which is authorized under Section 11 of the Housing Opportunity Program Extension Act of 1996 ("HOPE Act"). 42 U.S.C. § 12805 (2004). The HOPE Act directs the Secretary of HUD to "make available a model program to provide grants to public and private nonprofit organizations and community housing development organizations" for the "acquiring, rehabilitating, and constructing [of] housing by the self-help housing method." Id. § 12805(a). The "Secretary shall select organizations and consortia . . . to receive grants through a national competitive process, which the Secretary shall establish." Id. § 12805 note (c). The statute explains that the guidelines for this model program shall generally comport with those set forth in a related farm housing statute,

2

42 U.S.C. § 1490c. 42 U.S.C. § 12805(f). That statute, in turn, provides the Secretary with the authority to "establish appropriate criteria and procedures in order to determine the eligibility of applicants for the financial assistance provided," 42 U.S.C. § 1490c(e), and states that the "Secretary shall issue rules and regulations for the orderly processing and review of applications under this section," 42 U.S.C. § 1490c(h). In 2006, in accordance with the HOPE Act, HUD published two notices in the Federal Register that provide the relevant guidelines and procedures for the SHOP grant competition.

First, HUD published the Notice of HUD's Fiscal Year 2006 Notice of Funding Availability Policy Requirements and General Section to the SuperNOFA for HUD's Discretionary Programs, 71 Fed. Reg. 3382 (Jan. 20, 2006) ("General Section") (attached as Exhibit A). The General Section set forth the basic application requirements that pertained to almost all of HUD's grant programs for this year, including the SHOP. Id. at 3382. HUD published the General Section before publishing this year's notices of funding for individual grant programs, so that prospective applicants would have more time to "familiarize themselves with the General Requirements applicable to all programs," and would therefore be able to "focus on completing and submitting their applications in accordance with all related requirements and timelines" once the individual grant program notices were published. Id.

The General Section explained that grant applications must be submitted electronically to a federal government website called "Grants.gov," which would then validate and transmit the application to HUD. Id. at 3382, 3392. The General Section then directed applicants to HUD's December 9, 2005 Federal Register Notice entitled "Notice of Opportunity to Register Early for Electronic Submission of Grant Applications for HUD Funding Opportunities," which set forth step-by-step instructions for registering and renewing registration with Grants.gov. Id. at 3382. The

3

General Section also made clear that applications submitted through Grants.gov must be both

received and validated by Grants.gov by 11:59:59 p.m. eastern time on the application deadline date

established for each individual grant program.  Id. at 3389.

The validation process ensures that an application is virus-free, meets deadline requirements,

is submitted by an authorized organization representative, and contains all required information.  71

Fed. Reg. at 3389.  As noted in the General Section:

> The validation check occurs 24 to 48 hours after the application submission.
> Therefore, HUD recommends that all applicants submit their application no later
> than 48 to 72 hours before the deadline.  That way, if the application fails the
> validation process, the applicant will receive an e-mail notification providing the
> error messages . . . [and will] have time to cure deficiencies in their application and
> resubmit it in time to meet deadline requirements.

Id.

In creating the various application deadlines, HUD "considered the validation process and

established due dates for all [grant applications] that buil[t] in the additional time for the validation

process.  For example, if HUD previously provided a 60-day application period, HUD [provided] a

63-day application period in FY2006."  Id.  The General Section repeatedly cautioned that "[i]f the

application is not validated before the deadline date, it will not be considered as meeting the

deadline requirements," and that "HUD will not consider any late application submissions."  Id. at

3392.  Further, the General Section specifically urged applicants to:

> Please take into account the transmission time required for submitting your
> application via the Internet and the time required to fax any related documents.
> HUD suggests that applicants submit their applications during the operating hours of
> the Grants.gov Support Desk so that, if there are questions concerning transmission,
> operators will be available to assist you through the process.

Id.  The General Section also warned that "[u]ploading and transmitting a large file, particularly

electronic forms with associated eXtensible mark-up language (XML) schema, will take

considerable time to process and be received by Grants.gov." Id.

In addition to detailing the requirements associated with the electronic submission of applications, the General Section provided applicants with the opportunity to request a waiver of the electronic submission requirement altogether, so that an applicant could submit its application in paper form. 71 Fed. Reg. at 3393 (citing 24 C.F.R. § 5.1005, which permits waiver of the electronic submission requirement on the basis of good cause). The General Section recommended that an applicant seeking such a waiver submit its request no later than 15 days before the application deadline so that HUD would have sufficient time to process the request. Id. at 3393. However, applicants could also expedite their request by e-mailing the specific grant program's contact at HUD. Id.

Second, on March 8, 2006, HUD published the Fiscal Year 2006 SuperNOFA for HUD's Discretionary Programs ("NOFA"). 71 Fed. Reg. 11712; see also Plaintiff's Complaint ("Compl.") at Exhibit 1. The NOFA incorporated all of the application and submission requirements set forth in the General Section. 71 Fed. Reg. at 11712, 11966.

The NOFA required electronic applications for the SHOP grant to be received and validated by Grants.gov by May 24, 2006. Id. at 11967. The NOFA reiterated that an applicant could request a waiver to the electronic submission requirement, allowing the applicant to submit a paper copy of the application to the appropriate HUD office by May 24, 2006. Id. In addition, the NOFA (as did the General Section) explained that applicants using the electronic submission process could still submit certain attachments–but not the entire application itself–via facsimile, so long as HUD received the documents by 11:59:59 p.m. eastern time on the application deadline date. Id.; see also 71 Fed. Reg. at 3391-92. The NOFA also stated that "[a]fter the application submission date . . . HUD may not consider any unsolicited information you may want to provide. However, HUD may

5

contact you to clarify an item in your application or to correct technical deficiencies." 71 Fed. Reg.

at 11971. The NOFA and General Section describe technical deficiencies as applications which are

incomplete in some minor way. "Examples of curable (correctible) technical deficiencies include

inconsistencies in the funding request, failure to submit the proper certification, [ ] failure to submit

an application that contains a signature by an official able to make a legally binding commitment on

behalf of the applicant," and, in the case of an applicant who has obtained a waiver of the electronic

submission requirement, "the failure to submit an application that contains an original signature."

71 Fed. Reg. at 3397; see also 71 Fed. Reg. at 11971.

Finally, the NOFA stated that "HUD staff may provide general guidance and technical

assistance about this NOFA. However, staff is not permitted to assist in preparing your

application." 71 Fed. Reg. at 11972. The NOFA then referred applicants to the Grants.gov

Customer Support center for technical support for downloading and submitting applications. Id.

### STATEMENT OF FACTS[1]

Plaintiff, PPEP Microbusiness and Housing Development Corporation, is an organization

representing a consortium of ten non-profit organizations located in Arizona, Colorado, Hawaii, and

New Mexico. Compl. ¶ 1. Prior to 2006, Plaintiff applied for SHOP grants from HUD, receiving

grants in some years and not in others. Id. at Exhibit 7.

On May 16, 2006, Plaintiff's Regional Grants Administrator, Joni Soriano, contacted the

Grants.gov help desk for assistance in downloading the SHOP application packet. Id. at ¶ 17. After

six attempts, Ms. Soriano was able to successfully download the application. Id. ¶ 18. On that same

day, Ms. Soriano contacted the HUD Office of Departmental Grants Management and Oversight

---

[1] Unless otherwise indicated, this statement of facts is based on the events described in
Plaintiff's Complaint. Defendants do not concede the accuracy of Plaintiff's statement of facts.

and inquired as to whether the Grants.gov system would be able to process a submission with large electronic files. Id. ¶ 19. According to Plaintiff, a program analyst at HUD suggested that Ms. Soriano submit the application attachments to HUD via facsimile. Id. ¶ 22. However, Ms. Soriano rejected this option, stating that submission via facsimile was "impossible since there were more than [one hundred] attachments" in Plaintiff's application. Id. Ms. Soriano ultimately concluded that the best course of action would be to submit the application electronically, with the attachments as zip files. Compl. ¶ 23. Also on May 16, 2006, Plaintiff's IT Administrator told Ms. Soriano to "not submit [the] SHOP application during the day because of its large contents" and to instead "do the submission after 5:00 when [Plaintiff's] network is not as busy . . . ." Id. at Exhibit 3. Plaintiff alleges that Ms. Soriano contacted HUD again on May 22, 2006, and that the HUD program analyst informed Ms. Soriano that applicants could electronically submit their application attachments via large zip files. Compl. ¶ 24.

In Ms. Soriano's words, although she told HUD that she would "submit [the SHOP application] the day before the deadline," "that timeline did not happen[ ] to me because I was working with some of the important details that my consortium members and affiliates have forgotten to provide and leveraging letters have to be corrected, budgets have to be changed and so on and so forth that I did not finish the entire application packet not until 4:00 pm Pacific Daylight Time on May 24, 2006. I have figured that I have five more hours before the deadline and what could go terribly wrong." Id. at Exhibit 3. Thus, according to Plaintiff, Ms. Soriano finished assembling the SHOP application at approximately 7 p.m. eastern time on May 24, 2006, five hours before the midnight deadline. Compl. ¶ 25. It was at this point, Plaintiff alleges, that Ms. Soriano first attempted to submit its application to Grants.gov. According to Plaintiff, it attempted to submit the application several times before 11:59 p.m. eastern time, but was unable to successfully submit

the application because "the application continuously crashed." Id. ¶ 26, 28. Plaintiff's IT department maintains that, "the problem was caused by HUD's software and not [Plaintiff]'s capabilities." Id. ¶ 33.

On May 31, 2006, one week after the SHOP grant application deadline had passed, Plaintiff submitted a paper copy of its application to HUD. Id. ¶ 34. HUD informed Plaintiff that the application would not be reviewed because it was untimely. On June 14, 2006, Plaintiff, by letter to HUD, "appeal[ed] the failed electronic submission" and requested that HUD accept Plaintiff's late SHOP application. See Compl. at Exhibit 7. On August 17, 2006, William H. Eargle, Jr. denied Plaintiff's request to reconsider the paper copy submission as timely. Compl. at Exhibit 8. Mr. Eargle cited the General Section provision, "advising applicants to submit their applications at least '48 to 72 hours in advance of the deadline,'" so that any submission problems could be resolved before the deadline.

On October 6, 2006, HUD announced that it had awarded the entire amount of funds available under the FY 2006 SHOP to three organizations. "HUD Awards Nearly $20 Million in 'Sweat Equity' Grants to Fund Three National Homeownership Organizations," http://www.hud.gov/news/release.cfm?content=pr06-132.cfm (Last accessed December 20, 2006) (attached as Exhibit B); Declaration of Clifford Taffet ("Taffet Decl.") ¶¶ 4-5 (attached as Exhibit C).

In its Complaint, Plaintiff contends that HUD was remiss in its duty "to permit the Consortium to compete for the FY 2006 SHOP grant" because Plaintiff's "failure to timely submit their electronic application was through the fault of the Government's system." Compl. ¶ 42. Furthermore, Plaintiff asserts that HUD's refusal to accept its application as timely will result in significant damage to the Consortium, including loss of potential public and private project funding,

8

loss of affordable housing opportunities in the relevant geographic areas, a decrease in earnings for construction material vendors, and the termination of Consortium employees. Id. ¶ 44. Plaintiff seeks a mandatory injunction requiring HUD to "accept and review" its "application for the FY 2006 SHOP grant alongside the applications of the other competitors for the grant," as if the application had been "timely filed." Id. at 11. Plaintiff also requests an award of reasonable fees and costs as well as any other relief that the Court finds proper.

## STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a claim on the ground that the Court lacks jurisdiction over the subject matter. Where necessary, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992). Accordingly, a motion to dismiss for lack of subject matter jurisdiction that relies on matters outside the pleadings, such as a declaration or other documents, should not be converted to a Rule 56 motion for summary judgment. See Fed. for Am. Immigration Reform, Inc. v. Reno, 897 F. Supp. 595, 600 n.6 (D.D.C. 1995), aff'd, 93 F.3d 897 (D.C. Cir. 1996); see also 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Proc. § 1350 at 159-80 (3d ed. 2004) (explaining that affidavits and other additional matter may be used to support a Rule 12(b)(1) motion).

A motion to dismiss for failure to state a claim should be granted where the complaint fails to "state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). A court may grant a Rule 12(b)(6) motion when it appears that there is no set of facts under which the plaintiff would be entitled to relief. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). In deciding a motion to dismiss under Rule 12(b)(6), a court "may consider only the facts

alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." Id.

## ARGUMENT

### I.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

####    A.    Plaintiff Fails to Identify an Applicable Waiver of Sovereign Immunity.

Absent express consent by Congress, suits against an agency of the United States, or agency employees acting in their official capacity, are barred by the doctrine sovereign immunity. See Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994); Hawaii v. Gordon, 373 U.S. 57, 58 (1963); Dugan v. Rank, 372 U.S. 609, 620 (1963). Waivers of sovereign immunity must be unequivocally expressed and are to be strictly construed in favor of the sovereign. See United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992). Without an applicable statutory waiver of sovereign immunity, a court is without jurisdiction over a suit against the United States. United States v. Testan, 424 U.S. 392, 399 (1976). As the Supreme Court explained, "[i]t is elementary that 'the United States, as a sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Mitchell, 445 U.S. 535, 538 (1980) (ellipses omitted) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).

The party suing the United States or its agents "bears the burden of proving that the government has unequivocally waived its immunity." Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003). Here, Plaintiff has not identified any statutory provision that operates as a waiver of HUD's sovereign immunity in this matter. Although the Complaint alleges that this Court has jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. §

701, et seq., and the Mandamus Act, 28 U.S.C. § 1361, neither statute waives sovereign immunity in this case.

### 1. The APA's waiver of sovereign immunity does not apply here.

Plaintiff alleges that this Court has jurisdiction over this action pursuant to "the standards prescribed" in the APA. Compl. ¶ 5. Presumably, Plaintiff is relying on section 702 of the APA, which contains a waiver of sovereign immunity for certain equitable actions in which a person claims to have suffered a "legal wrong because of agency action" or was "adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . ." 5 U.S.C. § 702 (2004). The APA's waiver of sovereign immunity is not applicable in this case for two reasons.

First, section 702 operates as a waiver of sovereign immunity where the plaintiff has suffered a "legal wrong" or is "adversely affected or aggrieved" "within the meaning of a relevant statute." Here, Plaintiff has not identified a statute or other source granting it a right to have its late application reviewed by HUD under these circumstances, nor is such a right evident. See infra Part II.

Second, the APA's waiver of sovereign immunity does not apply to matters committed to agency discretion. 5 U.S.C. § 701(a) (2004) (exempting, from chapter 7 of the APA, all situations in which "statutes preclude judicial review" or "agency action is committed to agency discretion by law"); see Heckler v. Chaney, 470 U.S. 821, 830 (1985) ("The APA's comprehensive provisions for judicial review of 'agency actions,' are contained in 5 U.S.C. §§ 701-706 . . . [b]ut before any review at all may be had, a party must first clear the hurdle of § 701(a)."[2]

---

[2] While section 702 of the APA can waive sovereign immunity in both APA and non-APA cause of actions, see Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 186 (D.C. Cir. 2006), section 701(a)(2) limits the applicability of all provisions of the APA, including section 702's waiver of sovereign immunity in non-APA cases. Sanchez-Espinoza v. Reagan, 770 F.2d 202, 208 n.6 (D.C. Cir. 1985) (acknowledging the legal principle that section 701(a)(2)'s exception

An agency decision is deemed to be "committed to agency discretion" "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion." Heckler, 470 U.S. at 830.   This may occur when "statutes are drawn in such broad terms that in a given case there is no law to apply." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971).   Thus, when a statute authorizes an agency representative to make certain decisions but then offers no "relevant statutory reference point for the court" to evaluate those decisions, "other than the decisionmaker's own views of what is [ ] appropriate," the decision may be unreviewable under the APA. Milk Train, Inc. v. Veneman, 310 F.3d 747, 751 (D.C. Cir. 2003) (internal quotation marks omitted) (holding that the Secretary of Agriculture's determination of the manner in which to provide dairy subsidies was committed to agency discretion where the statute provided that the funds be disbursed "in a manner determined appropriate by the Secretary").

Here, the HOPE Act provides that the "Secretary shall select organizations and consortia referred to in subsection (a) to receive grants through a national competitive process, which the Secretary shall establish." 42 U.S.C. § 12805 note.   The statute explicitly entrusts the Secretary with the authority to "establish appropriate criteria and procedures in order to determine the eligibility of applicants for the financial assistance provided under this section," and provides that the "Secretary shall issue rules and regulations for the orderly processing and review of applications under this

---

for matters committed to agency discretion is an exception to the APA in general, as well as to its waiver of sovereign immunity); Cobell v. Babbitt, 30 F. Supp. 2d 24, 32 (D.D.C. 1998) ("Section 701 provides that the provisions of the APA do not apply to the extent that 'agency action is committed to agency discretion by law.' [ ] Because the relevant waiver of sovereign immunity for the present case is a provision of the APA, the Court must examine whether the defendants correctly posit the amount of discretion given to them by Congress."); see also Sprecher v. Graber, 716 F.2d 968, 974 (2d Cir. 1983) ("Congress did not intend to waive sovereign immunity where a matter is statutorily committed to agency discretion"); Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005) (affirming dismissal for lack of jurisdiction where section 701(a)(2) of the APA limited waiver of sovereign immunity).

section." 42 U.S.C. § 1490c(e), (h) (adopted into the HOPE Act by reference in 42 U.S.C. § 12805(f)) (emphases added). These statutory provisions make clear that the Secretary has the authority to establish a competitive process, including the criteria and procedures for processing applications. The statute does not provide any further guidance regarding the submission of applications. Thus, there are no relevant standards by which to judge the Secretary's decisions relating to whether the applications should be processed electronically, by mail, or by fax, and how to deal with late submissions. These are matters committed to the agency's discretion, and as such, chapter 7 of the APA–including section 702's waiver of sovereign immunity– does not apply in this case.

### 2. The Mandamus Act does not operate as a waiver of sovereign immunity.

Plaintiff also asserts that this Court has jurisdiction pursuant to the Mandamus Act, 28 U.S.C. § 1361 (2004). Compl. ¶ 6. The Mandamus Act provides that the "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Mandamus Act does not set forth a waiver of sovereign immunity. Washington Legal Found. v. United States Sentencing Comm'n, 89 F.3d 897, 901 (D.C. Cir. 1996) ("It is well settled that [the Mandamus Act] does not by itself waive sovereign immunity."); see also Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3-4 (1st Cir. 1989); Doe v. Civiletti, 635 F.2d 88, 94 (2d Cir. 1980); Smith v. Grimm, 534 F.2d 1346, 1352 n.9) (9th Cir. 1976). Instead, the Mandamus Act merely codifies common law mandamus actions. See Heckler v. Ringer, 466 U.S. 602, 616 (1984). Thus, without an explicit waiver of sovereign immunity, the Mandamus Act can only serve as a basis for jurisdiction if the defendant is sued for his individual actions rather than actions attributable to the sovereign. Washington Legal Found, 89 F.3d at 901; Chamber of Commerce v. Reich, 74 F.3d

1322, 1329 (D.C. Cir. 1996).

Here, there is no contention that Defendants acted outside the scope of their legal authority or exercised constitutionally void powers, as would be required for an individual capacity suit. See Reich, 74. F.3d at 1329. The Complaint makes no reference to Secretary Jackson, except to include his name in the caption and identify him as a party. Further, there is no allegation that Mr. Eargle violated Plaintiff's constitutional rights, or that he acted in excess of his statutory authority by rejecting Plaintiff's SHOP application. Therefore, Defendants' actions in this case are those of the sovereign and are subject to the defense of sovereign immunity.

**B.      Plaintiff's Claim is Moot.**

Even if Plaintiff were to overcome HUD's sovereign immunity defense, the Complaint should be dismissed under the principle that federal court jurisdiction is limited to "actual, ongoing controversies." McBryde v. Comm'n to Review Circuit Counsel Conduct & Disability Orders of the Judicial Conference of the U.S., 264 F.3d 52, 55. "If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." Id.

Plaintiff's requested relief is that HUD accept and review Plaintiff's application for the FY 2006 SHOP grant alongside the applications of the other competitors for the grant, as if Plaintiff's application had been timely filed. However, HUD has already reviewed the 2006 SHOP grant applications, announced the winners of the grant for this year, and signed and distributed the contracts awarding funding to the three grantees. Taffet Decl. ¶ 5. After grant funds have been committed to other applicants, any outside claim to those funds is moot. See City of Houston v. HUD, 24 F.3d 1421, 1426 (D.C. Cir. 1994) (holding that a challenge to HUD's decision to partially reallocate a grant, which had been initially awarded to the plaintiff, was moot after the funds had been obligated to other applicants); see also West VA Ass'n of Cmty. Health Ctrs.,734 F.2d 1570,

14

1576 (D.C. Cir. 1984) (explaining that grant funds are obligated for mootness purposes even if the recipient has yet to expend the funds).  HUD simply cannot turn back the clock and genuinely evaluate Plaintiff's 2006 application alongside the applications that were timely filed.  As the requested remedy cannot be granted, this case is moot and must be dismissed.

### C.    Plaintiff Lacks Standing with Regards to Part of the Alleged Injury.

Assuming *arguendo* that this Court has jurisdiction over Plaintiff's Complaint in general, Plaintiff's Complaint is nonetheless confined to HUD's refusal to accept an application submitted after the deadline; Plaintiff lacks standing to specifically complain about an alleged computer error on the Grants.gov website.

To establish standing, the plaintiff must allege a personal injury that is caused by the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.  Allen v. Wright, 468 U.S. 737, 751 (1984).  "Causation or 'traceability,' examines whether it is substantially probable [ ] that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff."  Florida Audubon Soc. v. Bensten, 94 F.3d 658, 664 (internal citations omitted).  In a causation analysis, the actions of one federal agency are distinct from the actions of another federal agency.  See Fulani v. Brady, 935 F.2d 1324, 1331 (D.C. Cir. 1991) (finding that the plaintiff's injury was not fairly traceable to the Internal Revenue Service because the injury was dependent on an intervening action of the Federal Election Commission).

Here, Plaintiff complains of two discrete events:  that a computer error, allegedly emanating from the Grants.gov website, prevented Plaintiff from electronically submitting its SHOP application before the deadline; and that HUD refused to accept a paper application that was submitted one week after the deadline.  To the extent that Plaintiff attempts to collapse these two events together and argue that HUD's refusal to accept an untimely application is improper because

the computer failure was attributable to HUD itself, Plaintiff does not have standing.

Grants.gov is the "governmentwide portal" for electronic grant applications, providing "a simple, unified access point for interactions between grant applicants and the Federal agencies that manage grant funds." Notice of Opportunity to Register Early for Electronic Submission of Grant Applications for HUD Funding Opportunities, 70 Fed. Reg. 73332-01, 73332 (December 9, 2005) (attached as Exhibit D). Various federal grant-making agencies, including HUD, utilize Grants.gov and provide funding for the administrative costs of Grants.gov. See id. at 73334; Declaration of Barbara Dorf ("Dorf Decl.") ¶¶ 3-4 (attached as Exhibit E). However, Grants.gov is not a part of HUD, nor does HUD have control over the daily operations of the Grants.gov website. Dorf Decl. ¶ 5. Rather, Grants.gov is a distinct entity, with the Department of Health and Human Services as a Managing Partner. See http://www.grants.gov/aboutgrants/about_grants_gov.jsp (Grants.gov organizational chart) (last accessed December 20, 2006) (attached as Exhibit F). Thus, to the extent that the conduct complained of in this case is linked to the alleged faulty "software program" on Grants.gov, Plaintiff's injury is not traceable to HUD, and therefore Plaintiff does not have standing to complain about HUD's actions on this ground.

## II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even if this Court finds that it has jurisdiction over Plaintiff's claim, the Complaint should be dismissed for failure to assert a legally cognizable claim. Plaintiff alleges that its failure to timely submit its SHOP grant application is "through no fault of [its] own, but was entirely the fault of the Government's software program." Compl. ¶ 45. This allegation is not only facially inaccurate, but it also fails to set forth any basis upon which relief can be granted.

Plaintiff's own description of the events reveal that it did not follow HUD's

recommendations during the application submission process, thereby inviting the very problems that occurred. HUD repeatedly warned all applicants to submit their FY 2006 SHOP grant application early, in order to avoid complications that can occur with last-minute submissions. HUD also provided applicants with the opportunity to seek a waiver of the electronic submission process and submit a paper application. Having failed to heed HUD's warnings, Plaintiff now argues that HUD must accept an application, submitted a week after the official deadline, simply because Plaintiff incorrectly assumed that it would face no technical difficulties when submitting its large electronic file after 7 p.m. on the night of the deadline. See Compl. at Exhibit 3 (Ms. Soriano's email to HUD stating "I was working with some of the important details that my consortium members and affiliates have forgotten to provide" and therefore "did not finish the entire application packet [ ] until 4:00 pm Pacific Daylight Time on May 24, 2006. I have figured that I have five more hours before the deadline and what could go terribly wrong."). The assumption that luck would be on Plaintiff's side was unjustified, given HUD's warnings that large electronic files take a considerable amount of time to process and that Plaintiff had already faced technical difficulties when downloading the application only eight days beforehand.

When an agency sets forth a deadline for the submission of an application, the applicant who waits until the deadline to make its submission does so at a considerable risk. Conscoop-Consorzia FRA Cooperative Di Prod v. United States, 62 Fed. Cl. 219, 237-38 (2004) ("Occasional errors in computer systems are a fact of life. We think an offeror accepts the risk of late receipt and rejection of a proposal where it delays transmitting its proposal until the last few minutes before the time set for receipt of proposals.") (internal quotation marks omitted). "Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any context, the deadline

17

must be enforced." Metro-Goldwyn-Mayer Studios, Inc. v. Peters, 309 F. Supp. 2d 48, 61 (D.D.C. 2004). A variety of misfortunes may lurk in the last minute. That an eleventh hour attempt may not always result in a successful submission is common sense, not a cognizable legal claim. There is no inherent duty on the part of an agency to accept an untimely application. See Universal City Studios LLP v. Peters, 402 F.3d 1238, 1244 (D.C. Cir. 2005) (rejecting plaintiffs' claim that the Copyright Office should accept their untimely royalty claims, and finding that plaintiffs were "entitled [ ] to nothing if they do not meet the terms of eligibility under the statute and its implementing regulations"). Nor is this a situation in which the applicant had a curable technical deficiency in its application, such as a missing signature. Instead, Plaintiff altogether failed to submit an application by the official deadline, and, in these circumstances, there is no legal claim to relief.

## CONCLUSION

For the foregoing reasons, the Court should determine that it lacks jurisdiction over Plaintiff's Complaint, or in the alternative, that the Complaint fails to state a claim upon which relief can be granted. The Court should therefore grant the Defendants' motion and dismiss the Complaint with prejudice.

Dated  December 22, 2006
Washington, D.C.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

MICHAEL SITCOV
Assistant Branch Director

OF COUNSEL:

CHRISTOPHER R. OPFER
Office of Litigation
U.S. Department of
Housing and Urban Development
451 7th Street, SW Room 10258
Washington, D.C. 20410

/s/ Varu Chilakamarri
VARU CHILAKAMARRI (NY Bar)
Trial Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
Tel: (202) 616-8489
Fax: (202) 616-8460
varudhini.chilakamarri@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C.  20044

Courier Address:
20 Massachusetts Ave., NW, Room 6141
Washington, D.C. 20001

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PPEP MICROBUSINESS AND HOUSING
DEVELOPMENT CORPORATION,
on behalf of the ROCKY MOUNTAIN/HAWAII
SHOP CONSORTIUM,

               Plaintiff,

  - against -

ALPHONSO JACKSON,
SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT,


WILLIAM H. EARGLE, JR.
DEPUTY ASSISTANT SECRETARY FOR
OPERATIONS,
ASSISTANT SECRETARY FOR COMMUNITY
PLANNING AND DEVELOPMENT,
UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.

1:06CV01615 (CKK)


## [Proposed] ORDER

      Upon consideration of the Defendants' Motion to Dismiss, it is hereby ORDERED that the

motion is GRANTED and that Plaintiff's Complaint is dismissed with prejudice.

Dated: _____.


                              _____
                              Judge Colleen Kollar-Kotelly
                              UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December 2006, I caused the foregoing Memorandum in Support of Defendants' Motion to Dismiss to be served on Plaintiff's counsel of record electronically by means of the Court's ECF system. In addition, on this date, I caused a copy of the foregoing to be served by Federal Express mail upon Plaintiff's counsel.

/s/ Varu Chilakamarri
VARU CHILAKAMARRI